NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180549-U

NO. 4-18-0549

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 8, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Macon County |
| MATTHEW A. ANDERSON, | ) | No. 13CF901 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice Steigmann and Justice Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:  When viewed in the light most favorable to the prosecution, the evidence supports
defendant's convictions for unlawful delivery of a controlled substance.

¶ 2    In May 2018, after a bench trial, defendant, Matthew A. Anderson, was found

guilty of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2012)),

unlawful delivery of a controlled substance on January 22, 2013 (720 ILCS 570/401(a)(2)(A)

(West 2012)), and unlawful delivery of a controlled substance on January 24, 2013 (720 ILCS

570/401(a)(2)(B) (West 2012)). Defendant appeals his unlawful-delivery convictions, alleging

the State failed to prove beyond a reasonable doubt he delivered drugs to Winston Baker, the

confidential informant. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In July 2013, defendant was charged with six offenses: (count VII) unlawful criminal drug conspiracy (720 ILCS 570/405.1 (West 2012)); (count VIII) unlawful possession of a controlled substance with intent to deliver a substance containing cocaine on July 9, 2013 (720 ILCS 570/401(a)(2)(A) (West 2012)); (count IX) unlawful possession of weapons by a felon on July 9, 2013 (720 ILCS 5/24-1.1(a) (West 2012)); (count X) unlawful delivery of a controlled substance on January 22, 2013 (720 ILCS 570/401(a)(2)(A) (West 2012)); (count XI) unlawful delivery of a controlled substance on January 24, 2013 (720 ILCS 570/401(a)(2)(B) (West 2012)); and (count XII) unlawful delivery of a controlled substance on February 5, 2013 (720 ILCS 570/401(c)(2) (West 2012)). Two other individuals, defendant's mother, Jill Blue, and his friend, Randall Roberson, were also charged with unlawful criminal drug conspiracy. Counts I through VI were charges against Roberson.

¶ 5        A bench trial was held over three days in April and May 2018. Defendant was acquitted of counts VII, VIII, and XII. Because defendant's appeal concerns his convictions for unlawful delivery of a controlled substance on January 22, 2013, and unlawful delivery of a controlled substance on January 24, 2013, our summary of the evidence relates to those offenses.

¶ 6        At trial, the State presented the testimony of Decatur police detective Chad Larner, who led the investigation of defendant and arranged the controlled buys of January 22, 2013, and January 24, 2013. For both controlled buys, Detective Larner worked with a confidential informant, Winston Baker. Detective Larner obtained a court order authorizing audio and video recording to monitor the transactions.

¶ 7        On January 22, 2013, Detective Larner met with Baker to arrange the purchase of cocaine from defendant. Before sending Baker to meet defendant, Detective Larner searched Baker and his vehicle for contraband such as narcotics, money, or weapons. Detective Larner

found none. He gave Baker $1600 to purchase cocaine. After the recording equipment was set, a phone call was made to a number known to belong to defendant. Detective Larner, who later interviewed defendant as part of the investigation into the charged offenses, identified the voice that answered Baker's call as defendant's.

¶ 8        According to Detective Larner, Baker left to purchase cocaine and returned in less than an hour. He handed Detective Larner a bag of a cocaine. The Decatur Police Department property record and evidence tag indicates the substance Baker gave to Detective Larner contained 28.5 grams of powder cocaine. No other contraband was found on Baker or in his car after he returned.

¶ 9        The record contains photos captured from the video recordings. In Exhibit A-2, Detective Larner identified defendant in the photo. The image shows defendant, in a white jacket, walking behind a vehicle and toward the residence. In Exhibits A-3, A-4, and A-5, defendant is inside the residence next to a table. He is wearing the same jacket. No other individual is in these photos. Exhibit A-6, taken within a minute of the other photos, is a close-up of the table seen in the other photos. In the image appears a tied plastic bag containing a white substance on the table. Money is on the table and in the hands of a person with white sleeves. That person is standing in the same place where defendant was standing in Exhibits A-3 through A-5, which were taken seconds earlier.

¶ 10        The video of the transaction establishes Baker arrived at the residence where the transaction occurred before defendant. Baker entered the residence. Two other individuals were inside. Just before defendant arrived, Baker stood at the door, appearing to watch for defendant. Defendant arrived and walked to the table that was shown in the still photos. Baker followed. The video shows defendant's handling the money in a manner consistent with counting it. A bag

of a white substance was on the table directly in front of defendant and next to money on the table. Baker picked up the bag and left the residence.

¶ 11         Turning to the events of January 24, 2013, Detective Larner testified he met with Baker to arrange another purchase of cocaine from defendant. As he did two days earlier, Detective Larner searched Baker and his vehicle for contraband and found none. An audio-recorded phone call was made to defendant's known number. Detective Larner testified he was able to recognize the voices on the audio recording: "That call would have been Winston Baker. And the male voice on the other end appeared to be Matthew Anderson." After the call was completed, Detective Larner gave Baker $5500 to purchase cocaine. Baker left Detective Larner with the money. In under an hour, Baker returned to Detective Larner. Baker gave to Detective Larner a clear plastic bag with field-tested positive cocaine. No contraband was found on Baker. The property record evidence tag demonstrates the package given to Detective Larner contained approximately 113.5 grams of powder cocaine.

¶ 12         Detective Larner identified Exhibits A-7 through A-11 as photographs taken from the video recorded by Baker. Those photographs show Baker's hands as he handed money to Jill Blue, defendant's mother. Exhibit A-11 shows the money in Blue's hands.

¶ 13         Detective Larner also identified Exhibits A-12 through A-17 as other still photos taken from the video. The time stamps on the photos show this series of photos started under 10 minutes after Exhibit A-11 and spanned a period of approximately 10 seconds. In Exhibits A-12 through A-16, defendant appears. No other individual appears in the photos. Exhibit A-12 shows defendant, sitting next to a table, holding a clear plastic bag that contains a white substance. The time stamp on that photo was "15:30:27." Exhibits A-13 through A-16 demonstrate defendant's hands were manipulating the bag. A device identified as "what appears to be a digital scale" by

Detective Larner is seen in the photos next to defendant. No item is on the scale in Exhibits A-13 through A-16. Exhibit A-17 is a photograph of the table. It was captured nine seconds after Exhibit A-16. On the table appears a pair of scissors, a clear plastic bag containing the white substance, an additional plastic bag, and a knotted plastic bag containing a white substance on top of the digital scale. The bag and its contents on the scale appear to be the same size of the bag that was in defendant's hands in the other still photographs.

¶ 14　　　　The video of the January 24, 2013, transaction was admitted into evidence. The video shows defendant passing a table on which there is a white powdery substance. A bag of a white substance is next to the powder on the table. Defendant retrieves a plastic bag from a counter near a coffee maker and returns to the table. Defendant appears to be wiping the substance toward him and the bag he was holding. The video shows defendant's arm moving, but the top of the table was not, at that time, captured by the recording. The video shows defendant twisting or knotting the plastic bag.

¶ 15　　　　On cross-examination, Detective Larner testified Baker became a confidential informant after "he had a driving while revoked, a felony driving while revoked case that he had gotten stopped for." Detective Larner agreed Baker "wanted to work off the case." At some point between March and May 2013, Baker was arrested for domestic battery. Because of this, Detective Larner terminated the cooperation agreement. Detective Larner acknowledged Baker had asserted he used his own cocaine in relation to a February 2013 controlled buy involving Roberson.

¶ 16　　　　The trial court explained its analysis in finding defendant guilty of count X, the January 22 offense. The court observed the evidence was circumstantial. The court noted the telephone conversation, the fact Baker was given money, and the still photos showed defendant,

money, and drugs. The court further emphasized the drugs were given to Detective Larner at a weight of 27.4 grams.

¶ 17 The trial court further explained its analysis in finding defendant guilty of count XI, the January 24 purchase of cocaine. The court noted the phone conversations, the fact that Baker, who had $5500, went to a residence, and Blue counted the money. The court further pointed to the evidence showing Baker returned to the detective with 108.7 grams of cocaine.

¶ 18 Defendant was sentenced to 9 years' imprisonment for unlawful possession of a weapon by a felon, 14 years for the January 22 offense, and 14 years for the January 24 offense. The terms were to be served concurrently.

¶ 19 This appeal followed.

¶ 20 II. ANALYSIS

¶ 21 On appeal, defendant argues the State failed to prove him guilty of the January 22 and January 24 unlawful delivery offenses as the evidence was insufficient to prove he engaged in the delivery of narcotics. Regarding both offenses, defendant emphasizes he was not seen by any testifying witness delivering narcotics to Baker, the transactions with Baker were not captured by video, and there were two other individuals at the locations where the transactions occurred. Defendant further contends Baker was unreliable as a confidential informant and did not testify at the trial.

¶ 22 When a defendant challenges the sufficiency of the evidence, this court must determine whether the evidence, when viewed in the light most favorable to the prosecution, permits any rational trier of fact to find the State proved the essential elements of the crime beyond a reasonable doubt. *People v. Hostetter*, 384 Ill. App. 3d 700, 711, 893 N.E.2d 313, 322 (2008). The same standard applies whether the evidence in the criminal case is direct or

circumstantial. See *People v. Pollock*, 202 Ill. 2d 189, 217, 780 N.E.2d 669, 685 (2002). In employing this standard, we "must allow all reasonable inferences from the record in favor of the prosecution" but "not allow unreasonable inferences." *People v. Cunningham*, 212 Ill. 2d 274, 280, 818 N.E.2d 304, 308 (2004).

¶ 23      To prove defendant guilty of the unlawful delivery of cocaine to Baker on January 22 and 24, 2013, the State must prove, in part, defendant knowingly delivered a controlled substance. See 720 ILCS 570/401(a)(2)(A), (B) (West 2012). The term "delivery" is defined as "the actual, constructive or attempted transfer of possession of a controlled substance, with or without consideration, whether or not there is an agency relationship." 720 ILCS 570/102(h) (West 2012). Defendant, citing *People v. Coots*, 2012 IL App (2d) 100592, ¶¶ 52-53, 968 N.E.2d 1151, asserts proof of "possession" and thus "delivery" requires more than proof that defendant handed or gave Baker a controlled substance.

¶ 24      Viewing the evidence in the light most favorable to the prosecution, we find the evidence sufficient to support both January convictions. As to the January 22 offense, testimony established Baker called defendant to organize the buy. Detective Larner identified the voice on the line as defendant's. Baker went to a residence, where he waited for defendant to arrive. Photos taken from the video establish defendant was in the driveway at 3:37 p.m. Approximately 18 seconds later, defendant is seen standing in front of a table on which a knotted bag of a white substance sits next to a small stack of money and within a foot or so of defendant's hands, which are holding money. No other individual is seen in these photographs. Baker picks up the bag containing a white substance and leaves. The time stamps on the photographs show the time from defendant's arrival to the driveway to the last photograph establish less than a minute elapsed. Baker left the residence at approximately 3:39. Baker gave the 28.5 grams of cocaine to

Detective Larner. The evidence, when viewed in the light most favorable to the State, permits any rational trier of fact to find the State proved defendant transferred possession of the cocaine to Baker.

¶ 25 Regarding the January 24 offense, the controlled buy was initiated by a call from Baker to a number known to be defendant's. Baker arranged the purchase with the individual on the call, whom Detective Larner identified as defendant. While the still photographs taken from the video show Blue accepting the money from defendant at 3:22 p.m., the other photographs of the transaction show defendant holding a clear plastic bag containing a white substance. The bag is significantly larger than the one in the January 22 photographs. The series of photographs of defendant at a table holding the plastic bag begin at 3:30:27 and end two seconds later. Defendant appears to be manipulating the bag, seemingly knotting it. In the photographs of those few seconds, the digital scale can be seen on the table. No item appears on the scale while defendant is holding the bag. The last photograph in the series, time stamped 3:30:38 p.m., shows a clear, knotted bag with a white substance on a scale. The size of the bag is consistent with the size of the bag in defendant's hands. Other than Blue, who last appeared in the photos approximately eight minutes before defendant was captured in a photo holding the bag containing a white substance, no other individual appears in this series of photos. Baker returned to Detective Larner and gave him 113.5 grams of cocaine. The evidence and the reasonable inferences that arise therefrom are sufficient to show defendant transferred possession of the cocaine to Baker and to sustain defendant's conviction for the January 24 offense. See *Pollock*, 202 Ill. 2d at 217 ("Circumstantial evidence alone is sufficient to sustain a conviction where it satisfies proof beyond a reasonable doubt of the elements of the crime charged.").

¶ 26 III. CONCLUSION

- 8 -

¶ 27        We affirm the trial court's judgment.

¶ 28        Affirmed.